**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LO NG PHARMACY CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-1662-MTS |
| | ) | |
| EXPRESS SCRIPTS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants Express Scripts, Inc. and Medco Health Solutions, Inc. (collectively, "Defendants")'s Motion to Dismiss, Doc. [49].[1]  Plaintiff LO NG Pharmacy Corp. d/b/a Victoria Pharmacy ("Victoria") filed its initial Complaint and Application for Temporary Restraining Order, Doc. [1], seeking injunctive relief for Defendants' breach of contract, as well as other claims. A hearing was held, and the Court later denied Victoria's Motion for Temporary Restraining Order, Doc. [36].  Victoria amended its Complaint, Doc. [48], asserting claims for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business expectancy, and other claims.  Defendants then filed this Motion to Dismiss.  For the reasons to follow, the Court will grant Defendants' Motion.

### Background

Victoria is a neighborhood pharmacy operating in New York, that offers free delivery services for prescriptions and various other services.  Doc. [48] ¶¶ 11, 14.  Express Scripts, Inc. ("Express Scripts") is a Pharmacy Benefits Manager ("PBM") that administers and manages prescription drug programs.  *Id.* ¶ 16.  To serve its clients, Express Scripts uses pharmacy networks, and Victoria has been participating in the network since 2019.  Doc. [48] ¶¶ 16-18.  As such, the parties entered into a

---

[1] Also pending is Plaintiff's Motion to Dismiss Count VIII, Doc. [53], which the Court will grant.

Provider Agreement, Doc. [40], which governs the relationship.  The Provider Agreement references a separate Provider Manual, *see* Doc. [43], and the Amended Complaint sets out that the parties must also comply with the terms of the Provider Manual.  Doc. [48] ¶ 23.  Section 5.9 of the Provider Manual provides:

> When PBM has determined a Network Provider has . . . (iv) caused a claim to be submitted that PBM suspects was submitted inaccurately, under false pretenses . . . [or] (vi) taken any action or inaction that in any way suggests possible fraud, waste or abuse, . . . PBM shall have the right to take any or all of the following actions at its sole discretion:
> . . . .
> - Refer Network Provider to PBM's Pharmacy Disciplinary Action Committee (PDAC).  The PDAC will review evidence related to the suspected fraudulent activity and decide on appropriate disciplinary action.  Potential disciplinary actions include . . . termination from future participation in PBM's Provider Networks.
> - Terminate Network Provider's Provider Agreement.

Doc. [43] at 7.  Section 4.2.i. of the Provider Agreement also states that "[i]n the event of termination of this Agreement or any rate sheet for any reason, [Express Scripts] may notify Sponsors and their Members[2] regarding such termination."  Doc. [40] at 7.  On December 7, 2023, Express Scripts notified Victoria that it intended to terminate it from the provider network for alleged violations of the Provider Agreement.  Doc. [48] ¶ 32.  Express Scripts also notified Victoria's customers of such termination.  *Id.* ¶ 35.  Victoria then filed the instant action for breach.

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The purpose of such a motion is to test the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the Court assumes a complaint's factual allegations are true and makes all reasonable inferences in favor of the nonmoving

---

[2] The Provider Agreement defines "Sponsors" as "any contracted client of [Express Scripts] related to a Prescription Drug Program," and "Members" are defined as "a subscriber and his or her eligible dependents to which benefits are available pursuant to a Prescription Drug Program."  Doc. [40] at 1.

party, but the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility of a complaint turns on whether the facts alleged allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### Discussion

1. <u>Missouri law governs.</u>

The parties dispute whether New York or Missouri law should govern the present dispute. The Provider Agreement, entered into between the two parties, contains the following Choice of Law Provision:

> This Agreement shall be interpreted and construed in accordance with the laws of the State of Missouri. Any and all claims, controversies, and causes of action arising out of or relating to this Agreement, whether sounding in contract, tort, or statute, shall be governed by the laws of the State of Missouri, including its statutes of limitations, without regard to any conflict-of-laws or other rule that would result in the application of the laws of a different jurisdiction. Notwithstanding the foregoing sentence, solely

with respect to services rendered in the state of New York under this Agreement to any Member of any Prescription Drug Program offered by a Sponsor that is certified as a managed care organization under Article 44 of the New York State Public Health Law, this Agreement shall be interpreted and construed in accordance with the laws of the State of New York and any and all claims, controversies, and causes of action arising out of or relating to this Agreement, whether sounding in contract, tort, or statute, shall be governed by the laws of the State of New York, including its statutes of limitations, without regard to any conflict-of-laws or other rule that would result in the application of the laws of a different jurisdiction.

Doc. [15-1] at 10.  It is Plaintiff's contention that New York law governs because its Complaint alleges that it is "organized under the laws of the state of New York, where it also maintains its principal place of business."  Doc. [55] at 3.  However, this fails to establish that Plaintiff is in fact a "managed care organization under Article 44 of the New York State Public Health Law" to trigger the application of New York law.  In fact, Plaintiff has failed to allege any facts that it is a managed care organization in its Amended Complaint, Doc. [48].  Absent such a showing, the language of the Provider Agreement dictates that "the Agreement shall be interpreted and construed in accordance with the laws of the state of Missouri."

2. Plaintiff's declaratory judgment claim will be dismissed because it is duplicative of Plaintiff's breach of contract claim.

Express Scripts seeks to dismiss Victoria's claim for declaratory judgment alleging it is duplicative of its breach of contract claim.  The decision to entertain a declaratory claim is discretionary, and this Court has routinely dismissed declaratory judgment claims when (1) they are closely related factually to an alleged breach of contract claim and (2) the claimant can recover the relief sought in the declaratory judgment claim through the breach of contract claim.  *Parc Lorraine Condo. Assoc. v. Phila. Indem. Ins. Co.*, 4:24-cv-228-SRC, 2024 WL 2891465, at *2 (E.D. Mo. June 10, 2024).

Here, the declaratory judgment claim's scope is in fact closely related to the breach of contract claim.  Should the Court grant Plaintiff declaratory relief, Plaintiff would receive judgment that it did not act fraudulently or violate the Agreement, it would be entitled to an explanation and a review of

- 4 -

Defendants' decision, and its contract would be reinstated.  Should Plaintiff succeed on its claim for breach of contract, Plaintiff requests injunctive relief from the termination.  Ultimately, success on each claim would produce the same result—Plaintiff would be reinstated under the Agreement.  As such, the claim for declaratory judgment will be dismissed.  *See Reeves v. 21st Century Centennial Ins. Co.*, 4:22-cv-270-JAR, 2022 WL 2209412, at *4 (E.D. MO. June 21, 2022) (explaining that where a claim for declaratory judgment "is duplicative of [a] breach of contract claim," the resolution of such claim "would necessarily resolve her claim for declaratory relief" and "must be dismissed").

3.   Victoria has failed to show Express Scripts breached the Agreements.

As an initial matter, Plaintiff argues that the Court cannot consider the Provider Manual because it is "outside the pleadings."  However, the Court may consider matters necessarily embraced by the pleadings without converting a motion to dismiss into one for summary judgment.  Specifically, courts may consider "some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'"  *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013).  "In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'"  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).  Here, Plaintiff's Amended Verified Complaint states that "the parties to the Provider Agreement are also required to comply with the terms of Express' Provider Manual," and that the "Provider Manual set forth the terms of the parties' contract."  Doc. [48] ¶¶ 23, 26.  Therefore, the Provider Manual's contents are embraced by the Amended Complaint and may be considered by the Court, although not physically attached thereto.

After review of the Provider Manual and Provider Agreement, Plaintiff has also failed to plausibly allege its claim for breach of contract.  Under Missouri law, the elements of a breach of

contract include: (1) a contract, (2) the parties had rights and obligations under the contract, (3) breach, and (4) damages. *See Roe v. St. Louis Univ.*, 746 F.3d 874, 885-85 (8th Cir. 2014) (referencing *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. banc 2012)).  Turning to the Provider Manual, Section 5.9 provides:

> When PBM has determined a Network Provider has . . . (iv) caused a claim to be submitted that PBM suspects was submitted inaccurately, under false pretenses . . . [or] (vi) taken any action or inaction that in any way suggests possible fraud, waste or abuse, . . . PBM shall have the right to take any or all of the following actions at its sole discretion:
> . . . .
> • Refer Network Provider to PBM's Pharmacy Disciplinary Action Committee (PDAC).  The PDAC will review evidence related to the suspected fraudulent activity and decide on appropriate disciplinary action.  Potential disciplinary actions include . . . termination from future participation in PBM's Provider Networks.
> • Terminate Network Provider's Provider Agreement.

Doc. [43] at 7.  Here, Express Scripts issued a Termination Notice to Plaintiff on December 7, 2023, advising Plaintiff that it was terminating the Agreement because it suspected Plaintiff's conduct constituted fraud.  Doc. [48] ¶¶ 32-33.  Victoria alleges this amounted to a breach of the Agreement; however, such termination—based on suspicion alone—was expressly allowed in the Provider Manual.  As such, it cannot be said that Victoria has plausibly alleged a claim for breach of contract.[3]

4.  <u>The economic loss doctrine prohibits recovery under a claim for tortious interference.</u>

Plaintiff's claim for tortious interference with business expectancy also must be dismissed.  Here, Plaintiff alleges that Express intentionally or negligently interfered with Victoria's business relationships with Express Scripts' members, as well as other members of their families who utilized

---

[3] Because the terms of the Provider Manual expressly provided for termination of the Agreement, Victoria's claim for breach of the implied covenant of good faith and fair dealing is not applicable.  *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018) (explaining that "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract").  Additionally, Express Scripts' notification to Victoria's customers also fails to amount to a breach of the implied covenant because Section 4.2.i. of the Provider Agreement expressly states that "[i]n the event of termination of this Agreement or any rate sheet for any reason, [Express Scripts] may notify Sponsors and their Members regarding such termination."  *See* Doc. [40] at 7.

Victoria's services.  The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature.  *Self v. Equilon Enters., LLC*, 4:00-cv-1903-TIA, 2005 WL 3763533, at *8 (E.D. Mo. Mar. 30, 2005).  This Court has concluded on several occasions that although writing to customers is a "separate and distinct act" that may have "violated an independent duty outside the contract," no injury claimed is "separate and distinct from the injury caused by the alleged wrongful termination of its contract."  *See Heartland Med., LLC v. Express Scripts, Inc.*, 4:17-cv-2873-JAR, 2018 WL 4216669, at *2 (E.D. Mo. Sept. 5, 2018); *see also HHCS Pharmacy, Inc. v. Express Scripts, Inc.*, 4:16-cv-1169-CEJ, 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016).  Put differently, here, any alleged injury results from the termination of the Agreements by Express Scripts, and as such, the economic loss doctrine bars recovery.

5.  <u>Plaintiff has failed to plausibly allege that NY General Business Law § 349 applies.</u>

Plaintiff has also failed to allege a claim under New York General Business Law § 349. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ."  *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 238 (S.D.N.Y 2007).  The aim of § 349 is "to secure an honest market place where trust, and not deception, prevails." *Id.* (quoting *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 323-24 (N.Y. 2002)).  Ultimately, to make out a prima facie case under § 349, a plaintiff must show that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.* at 238-39 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

It is Plaintiff's contention that Defendants violated § 349 by "terminating Victoria's contract," which "interfered with the ability of thousands of patients . . . to timely obtain prescribed and necessary medications" from Plaintiff.  Doc. [48] ¶ 170.  However, § 349 is "fundamentally a consumer protection statute," and "contractual disputes between business are not encompassed within [§] 349." *Int'l Design Concepts*, 486 F. Supp. 2d at 239; *Beth Israel Med. Ctr. v. Verizon Bus.*

*Network Servs., Inc.*, 1:11-cv-4509-RJS, 2013 WL 1385210, at *5 (S.D.N.Y. Mar. 18, 2013) ("Section 349 does not extend to private contract disputes unique to the parties."). What is more, Plaintiff cannot claim standing "when the losses claimed arises solely as a result of injuries sustained by another party." *UnitedHealthcare Servs., Inc. v. Asprinio*, 16 N.Y.S.3d 139, 150 (N.Y. Sup. Ct. 2015); *see also Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA Inc.*, 3 N.Y.3d 200, 207 (N.Y. 2004) (explaining that "an insurer or other third-party payer of medical expenditures may not recover derivatively for injuries suffered by its insured"); *see also City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 622 (N.Y. 2009) (explaining that "[a]n injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party" and that under § 349 "derivative actions are barred"). Here, Plaintiff is alleging violations based on Defendants' termination of the Agreement, and Plaintiff seeks to assert standing on behalf of its customers. Neither contention is permissible under § 349. As such, these claims must also be dismissed.

6.  The federal Any Willing Provider laws do not create a private cause of action and are not incorporated into the Agreements by reference.

Finally, Plaintiff's allegation that Defendants violated Medicare's Federal Any Willing Provider Law ("AWP"), codified as 42 U.S.C. § 1395w-104(b)(1)(A), 42 C.F.R. § 423.120(a)(8)(i), and 42 C.F.R. § 423.505(b)(18), also fails. The AWP in § 1395w-104(b)(1)(A) requires that "[a] prescription drug plan shall permit the participation of any pharmacy that meets the terms and conditions under the plan." *United/Xcel-RX, LLC v. Express Scripts, Inc.*, 4:19-cv-221-SRC, 2019 WL 5536806, at *4-5 (E.D. Mo. Oct. 25, 2019). Additionally, 42 C.F.R. § 423.505(b)(18) states:

(b) The Part D plan sponsor agrees to –

(18) to have a standard contract with a reasonable and relevant terms and conditions of participation whereby any willing pharmacy may access the standard contract and participate as a network pharmacy including all of the following:
(i) making standard contracts available upon request from interested pharmacies no later than September 15 of each year for contracts effective January 1 of the following year.

- 8 -

(ii) providing a copy of a standard contract to a requesting pharmacy within 7 business days after receiving such a request from the pharmacy.

*Id.* This Court has held on multiple occasions that these provisions do not provide an express or implied cause of action. *See id.*; *see also Life Star Pharmacy, Inc. v. Express Scripts, Inc.*, 4:23-cv-186-JAR, 2024 WL 940365, at *2 (E.D. Mo. Mar. 4, 2024) ("This Court has addressed this issue before and finds that none of [§ 1395w-104(b)(1)(A), § 423.120(a)(8)(i), or § 423.505(b)(18)] provide an express or implied cause of action."); *see also Heartland Med. LLC*, 2018 WL 6831164, at *2.

Victoria attempts to salvage its claim arguing that the AWP laws are incorporated into the Agreement between the parties. However, this too misses the mark. Neither the Provider Agreement nor the Provider Manual references the provisions. While it is Victoria's contention that Medicare Part D's regulations require "each and every contract governing Part D . . . must comply with all applicable Federal laws, regulations and CMS instructions," *see* Doc. [55] at 25, "[t]erms not explicit in a contract may be incorporated into the contract by reference . . . but 'the intent to incorporate must be clear.'" *See Life Star Pharmacy, Inc.*, 2024 WL 940365, at *4 (quoting *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018)). And to clearly incorporate terms from another document, the contract must "make [] make clear reference to the document and describe[] it in such terms that it may be ascertained beyond a doubt." *Id.* (quoting *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.*, 204 S.W.3d 183, 196 (Mo. Ct. App. 2006)). Here, the Agreement fails to do as much. *See Life Star Pharmacy, Inc.*, 2024 WL 940365, at *4 (finding that where the plaintiff "fail[ed] to convince the Court" of such incorporation, the claims were dismissed).[4]

---

[4] Plaintiff also includes a claim for injunctive relief, but injunctive relief "is a remedy, not an independent cause of action." *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010). Because the Court has dismissed all Plaintiff's claims, this too will be dismissed.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Count III, Doc. [53], is

**GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Express Scripts, Inc. and Medco Health

Solutions, Inc.'s Motion to Dismiss, Doc. [49], is **GRANTED.**

A separate Order of Dismissal will be entered herewith.

Dated this 28th day of August 2024.

_____

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE